## UNITED STATES DISTRICT COURT.

BENJAMIN M. WHITLOCK and others agt. THE BARQUE THALES.

There is no distinction in principle as to the right to a lien in *rem* between the cases of supplies furnished to a ship owned by owners who are subjects or citizens of a foreign country, and a ship owned by owners who are citizens of the United States, but residents of a different state from that in which the supplies were furnished. In both cases it must appear on the part of the material man,

1st. That the supplies furnished, or repairs done, were necessary for the seaworthiness of the vessel.

2d. That the vessel, its owner, master or agent, had no money or credit in the port where the debt accrued sufficient to raise means to pay for the supplies, save by reference to an implied hypothecation of the *rem*.

3d. A party who advances moneys to the master of a disabled ship, in a port of another state, to which she does not belong, and in which her owners do not reside, to enable the ship to get the required supplies or repairs, is entitled to the same lien in *rem* as the material man.

4th. Where such a lien exists the taking a note in payment does not divest the lien if, on the trial, the creditor is ready to produce and surrender it.

5th. It is unnecessary to spread out in the libel the evidence upon which the allegations rest. The particulars and amounts which make up the claim are matters for reference, or for investigation on the trial, if the claimants come into court upon answer.

*Southern District of New York.*

THIS arose on exceptions to libel. The libellants allege that they are merchants, doing business in copartnership in the city of New York, and that the barque is an American vessel, belonging to the port of New York, and is now at that port; that on the 28th of August, 1856, on a voyage

to Buenos Ayres, she was at anchor at or near the port of Pensacola, in the state of Florida, which was not her home port, when she was driven on shore at that place in a gale of wind, and suffered great damage thereby; that she was subsequently got off and carried into Milton, in the same state, where it was found necessary to have her furnished certain supplies, and undergo thorough repairs, to render her seaworthy and fit her for her voyage; that captain Harry T. Howland, her master, then in command of her, not having any funds to pay for such repairs and supplies, and her owners then and still residing in New York, having no credit, or means of credit, in Pensacola or Milton, where the barque was a foreign vessel, applied to the firm of Keyser, Judah & Co., commission merchants, residing at Pensacola, to obtain the repairs, supplies and advances necessary for said vessel, on the credit of the vessel, who thereupon furnished the same on the faith and credit of the vessel, on or before November 15th, 1856, to the amount of $9,410.13, and thereby acquired a lien on her for such sum, and became assignees of such lien; that after such advances and repairs were made, and the vessel was fully equipped and repaired, the said master, on the 15th of November, 1856, at Pensacola, whilst a maritime lien existed on the vessel therefor, in order to procure money to discharge such lien, made and delivered to said Keyser, Judah & Co., two drafts or bills of exchange of that date, on Daniel L. Sturges, a part owner of the barque, one payable thirty days after sight, and the other sixty days after sight, each for the sum of $4,793.28, including therein $176.43 discount on exchange on said drafts, in addition to $9,410.13, the sum and amount of such supplies and expenditures; that on the 17th of November, 1856, Keyser, Judah & Co., for value received, indorsed the said bills of exchange, and at the same time, for value received, assigned and transferred to the libellants all claims and demands in favor of said Keyser, Judah & Co., against the barque, and

all liens upon her to which they were entitled by reason of repairs, supplies and necessaries so furnished by them to her; that the said bills of exchange were duly presented to the said Daniel L. Sturges, and accepted by him, and the one payable thirty days after sight was duly paid by him at maturity; but the one payable sixty days after sight has been but in part satisfied by the acceptor, and a large balance still remains due and unpaid thereon; that the libellants are now owners of the same, and of the liens on the barque for the repairs, supplies and advances aforesaid, and are ready to deliver up and cancel the bill of exchange upon the lien being satisfied and discharged. The libellants pray process *in rem*, and judgment against the barque, for the balance due on the demand aforesaid, with interest.

The claimant appeared to the above action and filed exceptions to the sufficiency of the allegations of the libel to entitle the libellants to maintain the suit and relief prayed for:

1st. Because the barque is an American vessel, and that the advances and repairs were made in a port of the United States, and not in a foreign port, and no lien therefor attached to the vessel.

2d. Because it does not appear by the libel that the owners of the vessel were at the time absent from the place where the advances and repairs were furnished.

3d. Because the libel does not state with sufficient exactness what the liens were for, nor when or how they were assigned to Keyser, Judah & Co.

4th. Because the libel does not state separately, and with certainty, what amount of supplies and repairs were furnished by Keyser, Judah & Co. to the barque, and what money was advanced by them, and to whom, and for what purpose.

5th. Because the libel does not state facts sufficient to give the court jurisdiction, or to warrant the decree prayed for.

C. L. BENEDICT, *for claimants.*
D. McMAHON, *for libellants.*

BETTS, District Judge. The case comes before the court for decision upon the pleadings alone, and the exceptions interposed by the claimants, are tantamount to a demurrer to the libel. (*Benedict Pr.*, §§ 466, 468; *Betts Pr.*, 48.) Some of the objections are formal in their character, and may, if well taken, be obviated by the libellants in reforming their libel. Others go to the merits of the case and are peremptory and final in their character. The question upon the merits, presented on the face of the libel, is whether the admiralty courts of the United States can take cognizance of a claim over a lien supposed to be acquired against a vessel for labor, materials and supplies furnished her in a port foreign to her own within the United States; that is, whether a vessel owned in New York, on a voyage to Buenos Ayres, being driven by stress of weather into a port in Florida, and there obtaining necessary repairs and supplies on credit, is subject to an action *in rem* therefor, in this district, on her return to it. The libel avers that the credit was procured by the master of the vessel for her necessities, and that he had no funds to pay for them, and that her owners resided in New York, and had no credit or means of credit in Florida to supply her wants.

A question would hardly have been mooted in this court upon this point, as the law in respect to the scope of maritime jurisdiction was accepted and administered here prior to the decision of the case of *Pratt* agt. *Reed*, by the supreme court in December Term, 1856, (19 *How. R.*, 359,) and the case which followed in the same court of the claimants of *the steamboat Jefferson* agt. *Beers*, (20 *How.*, 393, *December term*, 1857,) and the case in this court of *Collis* agt. *The Schr. Coemine*, (24 *vol. MSS. decisions*, 41, *May term*, 1858.) But it is insisted on the part of the claimants in this cause that the former doctrine in relation to the

jurisdiction of the admiralty over maritime liens upon American vessels arising out of contract, is so modified and restrained as to prevent its exercise unless in cases of bottomry, or express hypothecation, or that species of credit tantamount to them.

I consider it unnecessary to recapitulate the authorities which introduced or sanctioned the rule of maritime law, which has long prevailed in the admiralty courts of this country, that a credit given a vessel on the application of her master in a foreign port, for labor, materials, or supplies furnished to her necessities, constitutes a lien on the vessel as a security for such credit, if the master had no funds or credit at the place by which he could obtain them, or the owners were without such means which the master could command; because that doctrine was fully examined and ratified by the supreme court in the case of *Thomas* agt. *Osborne*, (19 *How. R.*, 22.) There was a difference of opinion on the Bench, as to the fact whether the credit in that case was given to the vessel or personally to the master, but the judgment of the court was pointed and explicit that the case was one of a maritime lien and of admiralty jurisdiction, if the credit in the case was given to the vessel. Had the transaction upon which this suit is founded, occurred in a port out of the United States, the facts alleged upon the libel and admitted by the exceptions, would indisputably be embraced within the principles and terms of the rule declared and adopted in the decision of *Thomas* agt. *Osborne*.

The case of *Pratt* agt. *Reed*, decided nearly simultaneously with that of *Thomas* agt. *Osborne*, differs from it in these two particulars:

1st. That the credit in the former was obtained in a port of the United States, foreign to the home port of the vessel, and that the master who obtained it, was also owner of the vessel, but there is no manifest disaccord in the doctrines declared in the two cases, as to the character and

degree of the necessities required (i. e. for supplies to the
vessel and the pledge or credit of the vessel,) in order to
render the advances procured in her favor, a *lien* on the
vessel, except the declaration of the court in *Pratt* agt.
*Reed*, that "it is a misapprehension to suppose circum-
stances of less pressing necessity for supplies and repairs
and an implied hypothecation of the vessel to procure them
will satisfy the rule than is sufficient to justify a loan of
money on bottomry for the like purpose."

There may be distinctions between the foundations of a
bottomry contract, and an implied or simple hypothecation
creating a lien, but that is not a point important to con-
sider in this case.

The decision in *Collis* agt. *The Schooner Coemine*, in this
court, was placed upon the facts and rule stated in *Pratt*
agt. *Reed*, and does not attempt to extend that principle a
shade beyond.

The case of the *Steamboat Jefferson* agt. *Beers*, (20 *How.*,
393,) does not appear to me to involve any point of juris-
diction applicable to the question in controversy in this
cause.    It appears aimed chiefly to determine that admiralty
courts cannot take cognizance of claims or contracts touch-
ing the construction of vessels in ports of the United
States.    The other questions discussed on that decision,
supply no doctrines controlling the facts of this case.

I am of the impression that there is practically no dis-
tinction between the rights and remedies of the libellants
upon this cause of action, whether incurred in a port out
of the home port, and therefore in that sense in a foreign
port, or in one territorially alien and foreign to the United
States.    The term is of the same import applied to either
locality.    In *Pratt* agt. *Reed*, the court seem to consider
each to be of the same signification, because they say "this
is the case of a foreign ship, the vessel belonging at Buffalo
as her home port, and the debt contracted at Erie in the
state of Pennsylvania."

In my opinion the libel sets forth facts which constitute a lien upon the vessel, and a right of action in this court in favor of the libellants, to enforce it, and that a decree upon the merits must be rendered in their favor, overruling the exceptions interposed on the part of the claimants.

The pleading in the libel is sufficiently full. It is unnecessary to spread out the evidence upon which the allegations rest. The particulars and amounts which make up the claim are matters for reference, or for investigation on trial, if the claimants come into court upon answer. A case of necessity for the credit procured by the master, and the consequent lien is sufficiently shown by the libel; and as those averments now stand before the court admitted by operation of the exceptions, the libellants are entitled to a decree for their debt and condemnation of the vessel to satisfy the same. The amount to be ascertained by reference to a commissioner to determine and report it to the court.

The claimants may, however, have leave to put in an answer to the merits within ten days after notice of this decree, and on payment of costs to be taxed.